[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cedar Fair, L.P. v. Falfas,* Slip Opinion No. 2014-Ohio-3943.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3943

CEDAR FAIR, L.P., APPELLANT, *v.* FALFAS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cedar Fair, L.P. v. Falfas,* Slip Opinion No. 2014-Ohio-3943.]

*Arbitration—R.C. 2711.10(D)—Vacation of arbitration award—Specific performance not an available remedy for breach of employment contract unless explicitly provided for in contract or by applicable statute.*

(No. 2013-0890—Submitted April 9, 2014—Decided September 18, 2014.)

APPEAL from the Court of Appeals for Erie County,

No. E-12-015, 2013-Ohio-1590.

_____

SYLLABUS OF THE COURT

Specific performance is not an available remedy for breach of an employment contract unless it is explicitly provided for in the contract or by an applicable statute. (*Masetta v. Natl. Bronze & Aluminum Foundry Co.*, 159 Ohio St. 306, 112 N.E.2d 15 (1953), applied.)

_____

**O'NEILL, J.**

{¶ 1}   In this case, we review the propriety of an arbitration award of reinstatement as a remedy for an employer's breach of an employment agreement.

{¶ 2}   In 2005 plaintiff-appellee, Jacob Falfas, was promoted to chief operating officer of defendant-appellant, Cedar Fair, L.P., where he had been continuously employed for nearly 35 years.  The terms of Falfas's relationship with Cedar Fair were detailed in a written employment agreement signed by both parties.  In his role as chief operating officer, Falfas reported directly to Cedar Fair's chairman of the board, president, and chief executive officer, Richard Kinzel, and was responsible for—among other duties—negotiating contracts for and purchasing shows that were performed in Cedar Fair's amusement parks.  In June 2010, Falfas became aware that Kinzel was unhappy with the contract and budgeting for one of those shows, and Kinzel's dissatisfaction led to a 94-second phone call between the two men on the afternoon of June 10, 2010.  After that phone call, Falfas believed that Kinzel had fired him, but Kinzel believed that Falfas had resigned.

{¶ 3}   Falfas's termination ultimately became the subject of binding arbitration, and the arbitration panel found that Falfas had not resigned but had been terminated for reasons other than cause.  The panel went on to conclude that "equitable relief is needed to restore the parties to the positions that they held prior to the breach of the Employment Agreement," and, despite the fact that nearly eight months had passed since Falfas's employment had ended, the arbitration panel ordered Cedar Fair to reinstate Falfas "to the position he held prior to his wrongful termination."

{¶ 4}   It is the propriety of this order of reinstatement that we address today.  Cedar Fair appealed the arbitration decision to the Erie County Court of Common Pleas.  The trial court concluded that the arbitration panel's order of reinstatement went beyond the authority the panel was granted under the

employment contract. The Sixth District Court of Appeals reversed that decision, concluding that the arbitration panel had the authority to order Falfas's reinstatement under the contract and that reinstatement was consistent with Ohio law. Cedar Fair appealed to this court, and we accepted jurisdiction to determine whether an arbitration panel's order of reinstatement of a terminated employee is an available remedy for an employer's breach of contract. 136 Ohio St.3d 1491, 2013-Ohio-4140, 994 N.E.2d 462. We conclude that specific performance is not an available remedy for breach of an employment contract unless it is explicitly provided for in the contract or by an applicable statute.

{¶ 5} The authority of an arbitrator to interpret and enforce a contract is drawn from the contract itself, and for this reason we have held that "[a]n arbitrator's authority is limited to that granted him by the contracting parties, and does not extend to the determination of the wisdom or legality of the bargain." *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 519, 330 N.E.2d 703 (1975). The Ohio statute governing when a court may vacate an arbitrator's award provides that "the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration" if the award was the product of corruption, fraud, or undue means; if any arbitrator was partial or corrupt; if the arbitrators were guilty of misconduct or misbehavior; or if "[t]he arbitrators exceeded their powers." R.C. 2711.10(A) through (D). This statute is substantively equivalent to the analogous provisions of the Federal Arbitration Act, and we have often used federal law in aid of our application of the statute. *Compare* R.C. 2711.10 *with* 9 U.S.C. 10(a)(1) through (4); *see Goodyear Tire & Rubber Co.* at 520, 522-523 (quoting federal case law while applying R.C. 2711.10). And we have held that the statutory authority of courts to vacate an arbitrator's award is extremely limited. *See, e.g., Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio

St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 13. "Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties * * *." *Goodyear Tire & Rubber Co.* at 520.

{¶ 6} So long as arbitrators act within the scope of the contract, they have great latitude in issuing a decision. An arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court, because "[i]t is not enough * * * to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). Moreover, we have held that arbitrators have "broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned" in the applicable contract. *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

{¶ 7} Notwithstanding these principles, under R.C. 2711.10(D) arbitrators can exceed their powers by going beyond the authority provided by the bargained-for agreement or by going beyond their contractual authority to craft a remedy under the law. *See*, *e.g., Oxford Health Plans, L.L.C. v. Sutter*, ___ U.S. ___, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) (analyzing 9 U.S.C. 10(a)(4) of the Federal Arbitration Act). Arbitrators act within their authority to craft an award so long as the award "draws its essence" from the contract—that is, "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. *Accord Oxford Health*

*Plans* at 2068. So long as there is a good-faith argument that an arbitrator's award is authorized by the contract that provides the arbitrator's authority, the award is within the arbitrator's power, but an award "departs from the essence of a [contract] when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus. And finally, we note that it is well settled that " 'an arbitrator is confined to interpretation and application of the [contract]; he does not sit to dispense his own brand of industrial justice.' " *Id*. at 180, quoting *United Steelworkers of Am. v. Ent. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

{¶ 8} In short, if it can be fairly argued that the arbitrators' award of reinstatement to Falfas was contemplated by the contract at issue here and that the law arguably authorizes the award, the reinstatement should be upheld. These are quite deferential standards, but after analysis, we are compelled to conclude that by ordering Cedar Fair to reinstate Falfas, the arbitration panel exceeded its powers.

{¶ 9} Cedar Fair's employment agreement with Falfas contains four separate sections that are relevant to whether the agreement gave the arbitration panel the power to order Falfas's reinstatement:

> 7. ***Termination by Cedar Fair Other Than for Cause***.
>
> (a) If, other than pursuant to Section 10 or Section 12 hereof, Cedar Fair shall terminate Executive's employment (including by written notice of intent, pursuant to Section 2 hereof, not to renew this Agreement), then [Executive shall receive his base salary for either one year or the remaining employment term,

whichever is longer, and shall receive certain continuing benefits as specifically detailed in this Section].

All other benefits provided by Cedar Fair shall end as of the last day of Executive's active employment.

\* \* \*

10. *Termination for Cause*.

(a)  Cedar Fair may terminate Executive's employment for Cause.  \* \* \*

(b)  If Executive's employment shall be terminated for Cause, Cedar Fair shall pay Executive, in a lump sum, on the twentieth (20th) business day following the date of termination for Cause, his Base Salary through the date of his termination.

(c)  Cedar Fair shall have no further obligations to Executive under this Agreement.

11. *Termination By Resignation*.

In the event Executive resigns his employment, all benefits and compensation shall cease on the last day of Executive's active employment with Cedar Fair.

\* \* \*

19. *Arbitration*.

\* \* \*

(c)  \* \* \* The arbitration panel shall have authority to award any remedy or relief that an Ohio or federal court in Ohio could grant in conformity with applicable law on the basis of the claims actually made in the arbitration.  The arbitration panel shall not have the authority either to abridge or change substantive rights available under the existing law.

(Boldface and underlining sic.)

{¶ 10} The evidence presented at the arbitration hearing focused almost entirely on whether Falfas had resigned his position with Cedar Fair. Based on that evidence, Cedar Fair argued that Section 11 controlled and that Falfas was not entitled to any kind of postemployment compensation, because he had resigned. Falfas, by contrast, argued that he had been terminated without cause and that he was entitled to either reinstatement under Section 19(c) of the contract, with full continuing compensation and benefits as if he had not been terminated, or to compensation and benefits according to Section 7 of the contract. The parties agreed that Falfas had not been terminated for cause and therefore that Section 10 of the contract was not controlling.

{¶ 11} The arbitration panel concluded that "Falfas was terminated for reasons other than cause", and that "the facts fail to establish resignation." Based on this finding, Cedar Fair argues that the arbitration panel's power was limited to awarding Falfas the period of continuing compensation and benefits he was entitled to receive under Section 7 of the contract, which by its plain terms is a liquidated-damages provision in case of termination other than for cause. In support of this view, Cedar Fair points out that Section 2 of the employment agreement provided that "Cedar Fair shall have the right to terminate this Agreement at any time, subject to the obligations to provide the benefits and make the payments provided herein." But Falfas argues that because the panel also determined that "equitable relief is needed to restore the parties to the positions that they held prior to the breach of the Employment Agreement," and that because the panel was authorized under Section 19(c) of the contract "to award any remedy or relief that an Ohio or federal court in Ohio could grant in conformity with applicable law," the award of reinstatement was proper. Thus, the issue is whether the arbitration panel could conclude in good faith that specific

performance in the form of reinstatement was an available legal remedy under the law and therefore under Section 19(c) of the contract.

{¶ 12} Framed this way, the question suggests its own answer. It is hardly controversial to recognize that an order of specific performance is rarely an appropriate remedy for breach of an employment agreement. It is, for example, common for first-year law students to review the case of *Lumley v. Wagner*, 42 Eng.Rep. 687 (1852), in which the court observed that it lacked the power to order a singer who had contracted to perform at the plaintiff's theater to specifically complete her contract. *Id*. at 693. Ohio has long followed the same rule. *See Port Clinton RR. Co. v. Cleveland & Toledo RR. Co.*, 13 Ohio St. 544, 550 (1862) ("In the case of a contract for personal service, it may be that, on a refusal to perform the contract, an action for damages would not afford adequate relief, and yet it is clear that a court of equity will not attempt to enforce specifically such a contract"). *Accord Hoffman Candy & Ice Cream Co. v. Dept. of Liquor Control*, 154 Ohio St. 357, 96 N.E.2d 203 (1950), paragraph three of the syllabus.

{¶ 13} In *Masetta v. Natl. Bronze & Aluminum Foundry Co.*, 159 Ohio St. 306, 112 N.E.2d 15 (1953), paragraph two of the syllabus, this court held that "[a] court of equity will not, by means of mandatory injunction, decree specific performance of a labor contract existing between an employer and its employees so as to require the employer to continue any such employee in its service or to rehire such employee if discharged." *Masetta* is squarely within the mainstream on this question; surveying the cases related to the issue, the authors of a frequently cited treatise have observed that "[o]n occasion an employee has sought specific performance of an employment contract against an employer. Such relief has almost invariably been denied. Such enforcement * * * would involve difficulty of supervision and, often, forc[e] the continuance of a

8

distasteful personal relationship." (Footnote omitted.) Calamari & Perillo, *The Law of Contracts*, Section 16.5, at 618 (4th Ed.1998).

**{¶ 14}** To be fair, there are some exceptions to this general rule. Most notably, collective-bargaining agreements, civil-service laws, and civil-rights laws have all endorsed reinstatement as a remedy for wrongful termination of employment. *See, e.g.*, 29 U.S.C. 626(b) ("In any action brought to enforce [the Age Discrimination in Employment Act] the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion"). *See also, e.g.,* R.C. 4112.05(G)(1) (including "reinstatement" as an available remedy if the Ohio Civil Rights Commission determines that a respondent has engaged in an unlawful discriminatory practice). Recognizing these developments, this court has held that "specific performance of a reinstatement provision in a settlement agreement is appropriate when * * * the settlement agreement provides for reinstatement *in clear and unambiguous terms and when the settlement promise of reinstatement is given in exchange for the relinquishment of a statutorily-created right to reinstatement*." (Emphasis added.) *State ex rel Wright v. Weyandt*, 50 Ohio St.2d 194, 199, 363 N.E.2d 1387 (1977). In *Wright*, this court held that a clear bargained-for promise of reinstatement in an agreement could be enforced by specific performance. But even in light of *Wright*, the general rule forbidding compulsory performance survives—those exceptions discussed above would make no sense if it were otherwise. In short, unless a statute or the employment contract says otherwise, the rule in Ohio remains that specific performance is not an available remedy for breach of an employment contract.

**{¶ 15}** It is at best a strained conclusion that Section 19(c), which authorizes the arbitration panel to award "any remedy or relief that an Ohio or federal court in Ohio could grant" is sufficient to authorize reinstatement "in clear

and unambiguous terms," as did the settlement agreement in *Wright*. In order to maintain his argument that reinstatement is an available remedy, Falfas relies—in large part—on a single phrase from this court's decision in *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 543 N.E.2d 1277 (1989). In *Worrell* we noted in passing that "front pay is an equitable remedy designed to financially compensate employees where 'reinstatement' of the employee would be impractical or inadequate. In such circumstances an award of front pay enables the court to make the injured party whole, although reinstatement is the preferred remedy." *Id.* at 246. Falfas argues that because we recognized reinstatement as "the preferred remedy" in *Worrell*, the arbitration panel's award of reinstatement was a "remedy or relief that an Ohio or federal court in Ohio could grant in conformity with applicable law," and therefore it should be affirmed.

{¶ 16} But this argument relies on reading the quoted words in isolation from the remainder of the opinion and completely out of the context in which those words appear: as dictum grounded in discussing the remedies available under the Age Discrimination in Employment Act of 1967 ("ADEA"). The *Worrell* opinion directly supported the sentence at issue by citing *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338 (9th Cir.1987). In *Cassino*, the court, after quoting 29 U.S.C. 626(b) and its specific authorization of "reinstatement" as one avenue of relief, stated that while "reinstatement is the preferred remedy *in these cases*, it may not be feasible where the relationship is hostile or no position is available due to a reduction in force." (Emphasis added.) *Id.* at 1346. *Worrell* does not even begin to suggest that reinstatement to employment is the "preferred remedy" in all personal-services-contract disputes, which would be a manifestly incorrect understanding of the law. The opinion merely notes, far more prosaically, that reinstatement is a statutorily preferred remedy for wrongful dismissal *under the ADEA*.

{¶ 17} Falfas's reading of *Worrell* would have the statutory exception favoring reinstatement in employment-discrimination cases swallow the general common-law rule forbidding reinstatement in employment cases. But *Worrell* itself actually rejects this argument, observing as it does that "the usual remedy in breach of contract cases for wrongful discharge is to pay the injured party the difference between any wages due under the contract from the date of discharge until the contract term expires." *Id.* at 246. Moreover, the actual holding of *Worrell*, ironically, more closely supports the remedy advocated by Cedar Fair. *See id.* at 247 ("We hold that, as a result of breach of an employment contract where an employee has been wrongfully discharged, front pay, or lost future wages, may be awarded as compensation between the date of discharge and reemployment in a position of equal or similar status"). In short, it cannot be fairly argued that Falfas's interpretation of *Worrell* is even reasonable, let alone that it is a correct statement of the law—the only way this argument could work at all is to ignore everything other than the words "preferred remedy." We simply cannot hold that the arbitration panel acted within its authority in disregarding the general rule against reinstatement when the employment agreement here lacks the "clear and unambiguous terms" authorizing reinstatement that were present in *Wright*.

{¶ 18} We finally observe that Falfas's reading of Section 19(c) of the agreement is completely undermined by the existence of Sections 7, 10, and 11, which address the generally understood possibilities here: termination without cause, termination for cause, and resignation. The arbitration panel specifically found that Falfas was terminated without cause, and therefore, as the trial court concluded, Falfas was entitled to "his back pay and other benefits he enjoyed * * * as if the employment relationship had not been severed," as outlined in Section 7 of the agreement. Section 7, as Cedar Fair has argued to this court, quite clearly includes a liquidated-damages provision designed to set forth the

compensation and benefits to which Falfas is entitled on account of Cedar Fair's decision to terminate his employment contract without cause. The record before us demonstrates that the parties to the contract envisioned precisely what happened here. Nearly eight months passed between Falfas's termination and the arbitration panel's award. How could a large business entity like Cedar Fair properly function if an arbitration panel was authorized to force it to reemploy an unwanted senior officer after it had obviously moved on? Why would any such entity or employee agree to give an arbitration panel the power to cause such disruption? And why should the broad language in Section 19(c) be interpreted to allow such a result when Section 7, by implication, forbids it?

{¶ 19} For all these reasons, we hold that specific performance is not an available remedy for breach of an employment contract unless it is explicitly provided for in the contract or by an applicable statute and that the arbitration panel in this case exceeded its authority by holding otherwise. Because the fact-finder determined that Falfas was terminated for reasons other than for cause, he is entitled to his base salary for either one year or his remaining employment term, whichever is longer. That matter and other concerns are to be addressed by the trial court upon remand. But the contract clearly does not entitle him to reinstatement. We accordingly reverse the judgment of the court of appeals and remand this case to the Erie County Court of Common Pleas for further proceedings.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

_____

Organ Cole & Stock, L.L.P., Douglas R. Cole, Erik J. Clark, and Joshua M. Feasel; and Murray & Murray Co., L.P.A., Dennis E. Murray Jr., and Dennis E. Murray Sr., for appellant.

Wickens, Herzer, Panza, Cook & Batista Co., Richard D. Panza, William F. Kolis, Joseph E. Cirigliano, and Matthew W. Nakon, for appellee.

————————————————