[Cite as *Fairfield v. Internatl. Union of Operating Engs., Local 20*, 2024-Ohio-2850.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| CITY OF FAIRFIELD, OHIO, | : | | |
| Appellant, | : | | CASE NO. CA2023-07-085 |
| | : | | O P I N I O N |
| - vs - | | | 7/29/2024 |
| | : | | |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 20, | : | | |
| | : | | |
| Appellee. | : | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 04 0865

Stephen J. Wolterman, City of Fairfield Prosecuting Attorney, for appellant.

Law Office of Robert Mitchell, and Robert H. Mitchell, for appellee.

**HENDRICKSON, J.**

{¶ 1}  Appellant, City of Fairfield, Ohio ("the City"), appeals the decision of the Butler County Common Pleas Court that overruled its motion to vacate an arbitrator's award in favor of appellee, International Union of Operating Engineers, Local 20 ("the Union").  Instead, the court entered an order confirming the award.  Finding no error in the court's decision, we affirm.

## I. Facts and Procedural History

**{¶ 2}** This case arises from a dispute between the City and the Union over the interpretation of their collective bargaining agreement. At its core, the disagreement centers on the scope of information the City must provide to an Employee/Management Health and Dental Benefits Plan Committee ("the Committee").

**{¶ 3}** The City employs approximately 288 individuals, some of whom are represented by various unions. The Union's bargaining unit comprises roughly 21 employees. Additionally, three other unions represent bargaining units of employees: the American Federation of State, County and Municipal Employees ("AFSCME"), the Fraternal Order of Police ("FOP"), and the International Association of Fire Fighters ("IAFF").

**{¶ 4}** The collective bargaining agreements between the City and these unions contain identical language establishing the Committee. This body comprises representatives from each union, exempt employees, and the City. Its purpose is to make decisions about employee health benefits. Article 14, Section 3(B) of the collective bargaining agreement between the City and the Union ("CBA") delineates the Committee's authority:

> The Committee shall have the authority to alter or reduce health and/or dental benefits once annually . . . The Committee and the City Manager shall both have the authority to select the Plan Provider, membership in the Center for Local Government Benefits Cooperative, and/or the Third Party Administrator and to determine appropriate levels of reinsurance for any plan, except that both the Committee and the City Manager shall have the authority to veto any change in the Plan Provider, membership in the Center for Local Government Benefits Cooperative, and/or the Third Party Administrator or the levels of reinsurance proposed by the other. The Finance Director will provide the pertinent information in and available to his office to the Committee to assist them in their decisions and recommendations.

This provision grants the Committee significant power, including the ability to modify benefits and select insurance providers. Importantly, it also obligates the City's Finance Director to furnish "pertinent" information to aid the Committee's decision-making process.

{¶ 5} In 2020, the City transitioned some of its employees— exempt employees and those represented by AFSCME—to the Butler Health Plan (BHP), a public-entity pool. Other employees, including those represented by IAAF, FOP, and the Union, remained on the City's self-insured plan. This bifurcation set the stage for the present controversy.

{¶ 6} On May 6, 2022, during a Committee meeting, the Union requested claims data from BHP. This information, according to the Committee's insurance advisor, was necessary to obtain quotes for fully insured plans that could potentially cover all City employees again. Initially, the City's representatives at the meeting did not object to this request. However, the City subsequently refused to provide the data, asserting that it was neither pertinent to the Committee's responsibilities nor available to the Finance Director.

{¶ 7} This refusal prompted the Union to file a grievance, alleging a violation of Article 14, Section 3(B). The matter proceeded to arbitration, where the arbitrator, finding that the essential facts of the case were undisputed, ruled in favor of the Union, ordering the City to provide the requested information. The arbitrator found that the BHP claims data was both pertinent to the Committee's duties and available to the Finance Director.

{¶ 8} The City then sought to vacate the arbitration award in the Butler County Court of Common Pleas, while the Union moved to confirm it. On June 29, 2023, the common pleas court denied the City's motion to vacate and granted the Union's motion to confirm the award.

{¶ 9} The City appealed.

## II. Analysis

{¶ 10} The City presents three assignments of error arguing why the common pleas court should have vacated the arbitration award under R.C. 2711.10(D).

### A. The statutory framework and standard of review

{¶ 11} Ohio law strictly limits when courts can vacate arbitration awards. Under R.C. 2711.10, a court may do so only in four specific circumstances. *See Assn. of Cleveland Fire Fighters v. Cleveland*, 2003-Ohio-4278, ¶ 20. We are concerned with just one circumstance here: when "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D). This provision sets a high bar. We do not vacate awards just because an arbitrator got the facts wrong or misread the collective bargaining agreement. *See Cedar Fair, L.P. v. Falfas*, 2014-Ohio-3943, ¶ 6. Even a "serious error" is not enough. *Id.*, quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671 (2010). Instead, courts can intervene only when arbitrators venture beyond the authority given to them by the parties' agreement or by law. *Id.* at ¶ 7.

{¶ 12} In short, arbitration is all about the parties' choices. They picked this process to resolve their disputes, with its informality and speed. They selected these decision makers, with their specialized knowledge. Courts cannot second-guess those choices without undermining the entire arbitral system. That said, arbitrators do not have carte blanche. They must stay within the lanes marked out by the parties' agreement and the law. When they do not—when they exceed their powers—courts can and should step in.

{¶ 13} Turning to the question of when courts should step in—the standard of appellate review—we note that the parties here disagree. Until recently, Ohio's appellate courts were divided on this question too. But in 2018, the Ohio Supreme Court in *Portage*

*Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2018-Ohio-1590, resolved this split by holding that appellate courts should review these cases de novo. The Court held that "when reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Id.* at ¶ 26.

**{¶ 14}** It is important to emphasize, however, that this de novo review is narrowly focused on the common pleas court's application of the statutory grounds for vacatur. It does not invite a reexamination of the merits of the underlying dispute as presented to the arbitrator. *Cuyahoga Cty. v. Ohio Patrolmen's Benevolent, Assn.*, 2024-Ohio-1055, ¶ 18 (8th Dist.). The reviewing court's task is to determine whether the common pleas court correctly applied the limited statutory bases for overturning an arbitration award, not to substitute its judgment for that of the arbitrator on the substantive issues in contention.

### B. The arbitration award is sufficiently definite

**{¶ 15}** The first assignment of error alleges:

The Arbitrator, as a matter of law, so imperfectly executed his powers that a mutual, final, and definite award on the subject matter submitted was not made.

**{¶ 16}** The City's first challenge to the arbitration award is that it lacks the clarity and definiteness required by R.C. 2711.10(D). Specifically, the City argues that the award leaves ambiguous whether the Finance Director or some other City official must request the claims data from BHP. We disagree.

**{¶ 17}** The arbitrator's award states plainly:

The City violated Article 14, Section 3(B) by failing to provide requested information by the Health and Dental Benefits Plan Committee. As a remedy, the City shall immediately request BHP to provide the requested claims data and quote, both in regard to the initial request drafted by MMA and provided to

the City on May 9, 2022 relative to the now-commenced 2022-2023 plan year, as well as any future requests in regard to soliciting quotes for fully-insured plans covering all City employees. The City shall provide to the Committee the BHP claims data to which it is entitled.

This language leaves no room for genuine confusion. The award directs "the City" to take the specified actions. It is true that the underlying CBA assigns certain responsibilities to the Finance Director. But the City—not the Finance Director—was the party to this arbitration. And it is elementary that a municipality acts through its officers and employees. The City has ample authority to instruct its Finance Director, or any other appropriate official, to carry out the arbitrator's directive.

{¶ 18} The City's protestations of confusion ring hollow. An arbitration award need not spell out every minute detail of its implementation to be considered "definite" under R.C. 2711.10(D). It need only provide clear guidance on what must be done and by whom. This award does precisely that. Moreover, we note that adopting the City's position would create perverse incentives. It would encourage losing parties to manufacture ambiguity where none exists, all in an effort to escape the binding nature of arbitration. Such a result would undermine the finality and efficiency that are hallmarks of the arbitration process.

{¶ 19} The arbitration award satisfies R.C. 2711.10(D) as "a mutual, final, and definite award upon the subject matter submitted." The statute requires a precise assessment of whether the arbitrator addressed the submitted issue. *Whaley v. Mills*, 1992 Ohio App. LEXIS 4178, *3 (12th Dist. Aug. 17, 1992). It applies only when an award is so flawed that it fails to address the submitted issue. *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, ¶ 39 (8th Dist.). In this case, the arbitrator was tasked with determining if the City violated the CBA by refusing to provide requested information. The arbitrator ruled that the City had violated the CBA and ordered the City to hand over

the information, thus fully addressing the submitted issue. Consequently, the common pleas court was correct in refusing to vacate the award on these grounds.

{¶ 20} The first assignment of error is overruled.

### C. The arbitrator did not shift the burden of proof

{¶ 21} The second assignment of error alleges:

The Arbitrator improperly shifted the burden of proof to the City on the issue of whether the information requested was in and available to the office of the finance director.

{¶ 22} The City's second challenge is that the arbitrator improperly shifted the burden of proof. Specifically, the City argues that the arbitrator required the City to prove that the requested BHP claims data was not available to the Finance Director, rather than requiring the Union to prove that it was available. This argument mischaracterizes the arbitrator's analysis and, even if correct, would not justify vacating the award.

{¶ 23} First, a careful review of the arbitrator's opinion reveals no improper burden-shifting. Instead, the arbitrator engaged in a thorough evaluation of the evidence presented by both parties. He noted several key facts supporting the conclusion that the information was available. One, at the May 6, 2022 Committee meeting, when the need for BHP claims data was discussed, neither the Finance Director nor the HR Manager—both present—indicated any difficulty in obtaining this information. Two, the City later published a summary of the very information it claimed was unavailable, strongly suggesting its accessibility. And three, the City never actually requested the information from BHP, therefore undermining any claim of unavailability. These facts, taken together, led the arbitrator to conclude that the information was indeed available to the Finance Director. This is not burden-shifting; it is simply weighing the evidence presented.

{¶ 24} Moreover, even if we were to accept the City's characterization of the arbitrator's analysis—which we do not—it would not provide grounds for vacating the

award. As the Ohio Supreme Court has held, "An arbitrator's improper determination of the facts or misinterpretation of the contract does not justify reversal of an award by a reviewing court." *Cedar Fair*, 2014-Ohio-3943 at ¶ 6. This principle reflects the considerable deference we afford to arbitrators' decisions, recognizing the unique role they play in resolving labor disputes.

{¶ 25} The CBA does not specify who must prove information availability. It states only that "The Finance Director will provide the pertinent information in and available to his office to the Committee to assist them in their decisions and recommendations." Therefore, the arbitrator's assignment of the burden of proof—however he assigned it—does not conflict with any explicit CBA terms. Interpreting the agreement and deciding this issue falls within the arbitrator's authority. *See N. Royalton v. Urich*, 2013-Ohio-2206, ¶ 23 (8th Dist.) (arbitrator applied clear and convincing burden of proof where the agreement was silent as to the burden to be applied). The arbitrator's conclusion was based on a reasonable interpretation of the available facts. It is not the court's role to second-guess these determinations.

{¶ 26} For these reasons, we find no merit in the City's second assignment of error. The arbitrator did not improperly shift the burden of proof, and even if he had, such an error would not justify vacating the award under the stringent standards set forth in R.C. 2711.10. The common pleas court correctly declined to vacate the award on this basis.

{¶ 27} The second assignment of error is overruled.

### D. The arbitrator's interpretation of "pertinent"

{¶ 28} The third assignment of error alleges:

The Arbitrator and the Court of Common Pleas made a material mistake in determining as a matter of law that the information requested by the Union was pertinent.

{¶ 29} The City's final challenge is that the arbitrator erred in his interpretation of

the term "pertinent" as used in Article 14, Section 3(B) of the CBA. The City maintains that information about employees not covered by the self-insured plan cannot be "pertinent" to the Committee's responsibilities.

{¶ 30} The relevant language in the CBA is familiar by now: "The Finance Director will provide the pertinent information in and available to his office to the Committee to assist them in their decisions and recommendations." The arbitrator, after considering the evidence presented, determined that the BHP claims data was indeed "pertinent" to the Committee's duty to determine appropriate medical insurance.

{¶ 31} In reaching this conclusion, the arbitrator relied on several key factors. First, he noted that the insurance advisor had told the Committee that the BHP claims data was necessary to obtain quotes from insurers for fully insured plans. The arbitrator found the Committee's reliance on this professional advice to be reasonable. Second, he considered that while the AFSCME and exempt employees were not covered by the self-insured plan, they continued to have representation and voting rights on the Committee and might potentially choose to change plans. Finally, he observed that at the May 6, 2022 Committee meeting, when the information was initially requested, the City's representatives raised no objections.

{¶ 32} The City's argument here appears to stem from a concern, as expressed by the City Manager in his testimony, that the Committee might be attempting to expand its influence over city-wide policy decisions. However, this concern, while perhaps valid from a management perspective, does not directly address the question of whether the requested information is "pertinent" under the terms of the CBA.

{¶ 33} A court's limited role in reviewing an arbitration award means that it does not second-guess an arbitrator's interpretation of a bargaining agreement: so long as the arbitrator's award "draws its essence" from the agreement and is not unlawful, arbitrary,

or capricious it must be upheld. *Assn. of Cleveland Fire Fighters*, 2003-Ohio-4278 at ¶ 13. The arbitrator here provided a reasoned explanation for his interpretation, grounded in the language of the CBA and the factual context of the dispute. His determination that the requested information was "pertinent" to the Committee's CBA authority to select health insurance plans falls well within the bounds of a permissible interpretation of the agreement.

**{¶ 34}** The common pleas court, cognizant of the deference owed to arbitration awards, correctly declined to vacate the award on this basis. We find no error in its decision.

**{¶ 35}** The third assignment of error is overruled.

### III. Conclusion

**{¶ 36}** We have overruled each of the assignments of error presented. The City has not demonstrated a basis for vacating the arbitration award under R.C. 2711.10(D). Therefore we conclude that the common pleas court did not err in denying the City's motion to vacate.

The court's judgment is affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.