[Cite as *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2022-Ohio-4284.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellant,        :

                        No. 111076

    v.                          :

CLEVELAND POLICE PATROLMEN'S    :
ASSOCIATION,

    Defendant-Appellee.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 1, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-909661

---

### *Appearances:*

Zashin & Rich Co. LPA, George S. Crisci, and Scott H. DeHart, *for appellant.*

Henry J. Hilow; Jaime P. Serrat, LLC, and Marisa L. Serrat, *for appellee.*

LISA B. FORBES, J.:

{¶ 1} The city of Cleveland ("Cleveland") appeals from the trial court's journal entry denying its motion to vacate an arbitration award and granting the Cleveland Police Patrolmen's Association's (the "CPPA") motion to confirm an

arbitration award. After reviewing the facts of the case and the pertinent law, we affirm the trial court's judgment.

## I.    Facts and Procedural History

{¶ 2} In the early morning hours of March 19, 2015, Alan Buford ("Buford"), who was a patrol officer with Cleveland's Division of Police ("CDP"), and his partner Gregory King responded to a call regarding a breaking and entering at a convenience store on Cleveland's east side. The officers arrived at the store and waited at the door for the suspect to exit. Both officers had their firearms drawn with their fingers on the triggers. When the suspect exited the store, he was "crouched down." The officers instructed him to "stay down" and keep his hands visible. The suspect, 18-year-old Brandon Jones ("Jones"), did not comply with the officers' orders. Rather, Jones began to stand up and turned to face the officers. Buford and King could not see Jones's hands. According to Buford, he felt like Jones was attacking him. Buford said that he feared for his life, because he thought Jones was trying to take his gun. Buford fatally shot Jones in the chest.

{¶ 3} Buford was indicted for negligent homicide and ultimately acquitted after a bench trial. Specifically, the trial court found that the state "cannot proceed under a theory of negligent homicide and simultaneously claim that Buford intentionally discharged his weapon. A case predicated on negligent homicide * * * can only be maintained on the theory that [the] defendant's weapon was discharged by accident or inadvertence."

**{¶ 4}** CDP's internal affairs unit investigated whether Buford used deadly force, concluding that Buford did not "reasonably and objectively perceive an immediate threat of death or serious physical harm" and that Jones did not try to take Buford's weapon. Buford was charged with violating CDP's use-of-force policy and failing to deescalate the situation. A hearing was held, and Buford was found to have used excessive force in violation of CDP's General Police Order 2.1.01, which states in part as follows:

> Division members shall use only the force that is objectively reasonable to effectively bring an incident under control, while protecting the life of the member or others. Excessive force is strictly prohibited.
>
> * * *
>
> The use of force is not left to the unregulated discretion of the involved member. Use of force decisions are dictated by the actions of the resistant or combative person, Division policy, proper tactics, and training. Justification for the use of force is limited to the facts actually known or reasonably perceived by the member at the moment that force is used. Deadly force shall not be used to effect an arrest or prevent the escape of a person unless that person presents an imminent threat of death or serious bodily injury to members or others.

**{¶ 5}** CDP's General Police Order 2.1.01 further defines "Objectively Reasonable Force" as follows:

> that level of force that is appropriate when analyzed from the perspective of a reasonable officer possessing the same information and faced with the same circumstances as the officer who actually used force. Objective reasonableness is not analyzed with hindsight, but will take into account, where appropriate, the fact that officers must make rapid decisions regarding the amount of force to use in tense, uncertain, and rapidly evolving situations. This policy guideline applies to all use of force, not only the use deadly force.

**{¶ 6}** According to CDP's "Disciplinary Guidance" document, excessive use of force is a Group III offense and "[d]isciplinary action shall range from a 10 day suspension to temporary or permanent demotion to termination."

**{¶ 7}** As a result of CDP's determination that Buford violated the use-of-force policy, on December 28, 2017, Cleveland terminated Buford's employment. Pursuant to the parties' collective bargaining agreement's (the "CBA") "Grievance Procedure," the CPPA submitted Buford's termination to binding arbitration. The matter was heard on June 13, and June 14, 2018, with the parties stipulating to the following issue: "Whether there was just cause under the [CBA] to discharge [Buford]? If not, what shall be the remedy?"

**{¶ 8}** The arbitrator concluded that Cleveland did not have just cause to terminate Buford because it failed to prove that the deadly force he used was "objectively unreasonable," thus failing to prove that Buford violated CDP's use of force policy. The arbitrator ordered that Cleveland reinstate Buford "to the position of Patrol Officer with [CDP] with full back pay, seniority, and benefits, and otherwise made whole."

**{¶ 9}** Cleveland filed an application to vacate the arbitration award in the Cuyahoga County Common Pleas Court, and the CPPA filed a competing motion to confirm the arbitration award. On November 5, 2021, the trial court denied Cleveland's application to vacate and granted the CPPA's motion to confirm, ultimately concluding that "there is no choice here but to confirm the arbitrator's award," because it "draws its essence from the CBA and the arbitrator cited to

reliable, probative and substantive evidence in support of the award * * *." The trial court ordered Buford "reinstated to the position of patrol officer with full back pay, seniority and benefits, and to otherwise be made whole."

{¶ 10} It is from this order that Cleveland appeals, assigning one error for our review: "The trial court erred when it determined that the Arbitrator had not exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made, in accordance with R.C. 2711.10(D)."

## II. The Collective Bargaining Agreement

{¶ 11} Pursuant to Article XXII of the CBA, entitled "Grievance Procedure,"

In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the interpretation and/or application and/or compliance with the provisions of this [CBA], including all disciplinary actions and in reaching his decision, the arbitrator shall have no authority (1) to add or subtract from or modify in any way any of the provisions of this [CBA]; (2) to pass upon issues governed by law, (3) to make an award in conflict with law. * * *

The Grievance Procedure set forth in this [CBA] shall be the exclusive method of reviewing and settling disputes between [Cleveland] and the [CPPA] and/or between [Cleveland] and a member (or members), and all decisions of arbitrators shall be final, conclusive, and binding on [Cleveland], [CPPA], and the members.

## III. The Trial Court's Journal Entry Confirming the Arbitration Award

{¶ 12} In its journal entry confirming the arbitration award, the trial court found that

the arbitrator considered [the Director of Public Safety's] testimony, internal affairs records, records from the criminal investigation and trial, and forensic evidence — as well as testimony from Buford and the

CCPA's other witnesses [at the arbitration hearing] — in making the determination that Buford's actions did not violate the police department's use of force policy.

{¶ 13} The trial court determined that the arbitrator found the CDP report's conclusion that Buford "did not reasonably and objectively perceive an immediate threat of death or serious harm" was "incompatible with" Buford's testimony at the arbitration hearing that Jones attacked him. The trial court further stated that the arbitrator found that evidence in the record showed "it was reasonable for [Buford] to perceive a serious threat of physical harm from Jones." According to the trial court, "the arbitrator correctly looked at the totality of the circumstances as perceived by the officers in determining whether the use of force was justified."

## IV. Law

### A. The Trial Court's Role in Vacating or Confirming an Arbitration Award

{¶ 14} R.C. Chapter 2711 establishes methods to confirm or challenge an arbitration award. Pursuant to R.C. 2711.09, a "party to [an] arbitration may apply to [a] court of common pleas for an order confirming the award." Pertinent to this appeal, the court shall enter judgment confirming the award "unless the award is vacated" under R.C. 2711.10. *Id.*

{¶ 15} R.C. 2711.10 states in part that the court shall vacate an arbitration award "upon the application of any party * * * if: * * * (D) [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 16} The Ohio Supreme Court has held that "courts are limited to determining whether an arbitration award is unlawful, arbitrary, or capricious and whether the award draws its essence from the CBA. * * * An award draws its essence from the CBA when there is a rational nexus between the CBA and the award." *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001). On the other hand, an arbitration award "departs from the essence" of a collective bargaining agreement when it "'conflicts with express terms of'" the collective bargaining agreement or "'is without rational support or cannot be rationally derived from the terms'" of the collective bargaining agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11,* 59 Ohio St.3d 177, 183 572 N.E.2d 71 (1991), quoting *Cement Divs., Natl. Gypsum Co. v. United Steelworkers of Am.,* 793 F.2d 759, 766, (6th Cir. 1986). The Ohio Supreme Court has held that "[i]t is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate * * * an award." *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc. v. Cincinnati,* 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

{¶ 17} Additionally, courts may determine that otherwise valid arbitration awards are unenforceable because they are against public policy. *See Southwest Ohio Regional Transit Auth.* at 112-115. "[V]acating an arbitration award pursuant to public policy is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'" *Id.* at 112, quoting

*United Paperworkers Internatl. Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

**B. Appellate Standard of Review**

{¶ 18} "Judicial review of an arbitrator's decision is narrow." *Berns Custom Homes, Inc., v. Johnson*, 8th Dist. Cuyahoga Nos. 100837 and 101014, 2014-Ohio-3918, ¶ 12. The Ohio Supreme Court has held that "when reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, ¶ 26. Furthermore, the *Portage* Court determined that the issue of whether an arbitrator has exceeded his or her powers is a question of law. *Id*. at ¶ 25.

{¶ 19} "Our de novo review on appeal, however, is not a de novo review of the merits of the dispute as presented to the arbitrator." *Zeck v. Smith Custom Home & Designs, L.L.C.,* 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 12. Appellate courts review a trial court's order confirming or vacating "an arbitration award de novo to see whether any of the statutory grounds for [confirming or] vacating an award exist." *Adams Cty./Ohio Valley Local Sch. v. OAPSE/AFSCME, Local 572*, 2017-Ohio-6929, 94 N.E.3d 937 (4th Dist.), ¶ 18. "Appellate review does not extend to the merits of an arbitration award absent evidence of material mistake

or extensive impropriety." *Cuyahoga Metro. Hous. Auth. v. FOP, Ohio Labor Council, Inc.*, 8th Dist. Cuyahoga No. 104319, 2017-Ohio-190, ¶ 8.

## V. Analysis

{¶ 20} It is undisputed that, because Cleveland and the CPPA are parties to the CBA, they agreed to submit their dispute over Buford's termination to arbitration. "When parties agree to submit their dispute to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy." *Cleveland v. Fraternal Order of Police, Lodge No. 8,* 76 Ohio App.3d 755, 758, 603 N.E.2d 351 (8th Dist. 1991). Indeed, an "arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court, because '[i]t is not enough * * * to show that the [arbitrator] committed an error — or even a serious error.'" *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, ¶ 6, quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).

{¶ 21} Cleveland's arguments on appeal are that the arbitrator 1) "credit[ed] the self-serving testimony of Alan Buford over objective, forensic evidence that proved Alan Buford's testimony was impossible and untrue" and 2) "confirm[ed] the reinstatement of a Police Officer whose testimony about a fatal use-of-force incident had been proven false by objective, forensic evidence." In short, Cleveland argues that the arbitrator gave more weight to Buford's testimony at the arbitration hearing than he gave to other evidence submitted at the arbitration hearing, such as evidence from the CDP internal affairs investigation and Buford's criminal trial.

{¶ 22} We agree with the following analysis from the trial court's journal entry confirming the arbitration award in the case at hand:

> The city and the CPPA entered a contract agreeing to submit disputes like these to an arbitrator and then to live with the arbitrator's decision. The essence of the city's motion to vacate the award is that the case was wrongly decided on the facts. And the city might be right, insofar as a different arbitrator might have made a different decision. But that possibility alone does not provide a basis in law for a court to ignore the parties' agreement and vacate the award. Accordingly, there is no choice here but to confirm the arbitrator's award.

{¶ 23} The dispute in the instant case — whether or not Cleveland had just cause to terminate Buford's employment — arises from a grievance "as to the interpretation and/or application and/or compliance with the provisions of [the CBA], including all disciplinary actions * * *." Thus, pursuant to the CBA, the arbitrator had the authority to hear this dispute. The arbitrator did not add to, subtract from, or modify the CBA; he did not "pass upon issues governed by law"; and he did not "make an award in conflict with law," which are all prohibited under the CBA. The arbitrator found that Cleveland failed to show that the deadly force Buford used was "objectively unreasonable," thus failing to prove that Buford violated CDP's use of force policy. This finding aligns with the CDP's General Police Order 2.1.01, which defines use of force and objectively reasonable. Furthermore, the arbitrator made a final and definite award regarding the grievance by reinstating Buford to his job and ordering Cleveland to issue backpay.

{¶ 24} Accordingly, the arbitrator did not exceed his powers or so imperfectly execute them "that a mutual, final, and definite award upon the subject matter was not made."

{¶ 25} We turn to Cleveland's argument that the arbitration award in the case at hand violates public policy. Specifically, Cleveland argues that an "award directing an employer to reinstate a police officer who has been dishonest violates public policy." Without addressing the merits of Cleveland's argument, we find no evidence in the record of a finding that Buford was "dishonest." Cleveland argues that Buford's testimony "irreconcilably conflicts with unrefuted forensic evidence * * *." However, disputed testimony is a matter for the factfinder to determine and goes to the weight of the evidence and the credibility of the witness. *See, e.g., Banas v. Shively,* 2011-Ohio-5257, 969 N.E.2d 274 (8th Dist.). We are unwilling to conclude that disputed testimony amounts to dishonesty as a matter of public policy.

{¶ 26} Turning to the merits, Cleveland cites two cases to support its public policy argument. Both are inapplicable to the facts of the instant case. In *Ironton v. Rist,* 4th Dist. Lawrence No. 10CA10, 2010-Ohio-5292, a police officer pled guilty to, and was terminated for, falsifying a police report. Pursuant to the parties' collective bargaining agreement, the dispute went to arbitration. *Id.* at ¶ 4. The arbitrator reinstated the officer, concluding that the city lacked just cause to discharge her. *Id.* at ¶ 6. The court vacated the arbitration award, finding that "a dominant, well-defined public policy prohibits the reinstatement of a police officer who falsifies a report." *Id.* at ¶ 20. The arbitration grievance in *Rist* involved

falsifying a police report, Rist admitted to and was disciplined for falsifying a police report, and there is a public policy against falsifying a police report.

{¶ 27} Buford's arbitration grievance, on the other hand, involves excessive use of force. Buford did not admit to excessive force, although this is what he was disciplined for. However, Cleveland argues that the arbitration award violates a public policy against dishonesty. Accordingly, we are not persuaded by the court's reasoning in *Rist* when looking at the facts of the case at hand.

{¶ 28} Cleveland also cites *Bedford Heights v. F.O.P. Lodge 67*, 8th Dist. Cuyahoga No. 68229, 1995 Ohio App. LEXIS 2382 (June 8, 1995), as "instructive" to our analysis in the instant case. However, *F.O.P. Lodge 67* was dismissed for lack of a final appealable order. Because this court had no jurisdiction to hear that case, we decline to use it in our reasoning.

{¶ 29} Accordingly, we find that the arbitration award in the case at hand does not violate public policy.

{¶ 30} We reiterate that judicial review of an arbitrator's decision is narrow and limited. We are without authority to review the merits of the dispute presented to the arbitrator. Upon review, we find that there are no statutory grounds, under R.C. 2911.10(D), to vacate the arbitration award at issue, and we cannot say that the trial court erred by confirming it. Cleveland's sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR