[Cite as *Cuyahoga Cty. v. Ohio Patrolmen's Benevolent Assn.*, 2024-Ohio-1055.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CUYAHOGA COUNTY,        :

     Plaintiff-Appellant,      :

            v.                :

OHIO PATROLMEN'S BENEVOLENT,      :
ASSOCIATION,

                            :

     Defendant-Appellee.

No. 112924

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-972849

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew D. Greenwell and Matthew T. Fitzsimmons IV, Assistant Prosecuting Attorneys, *for appellant.*

Dominic D. Saturday and Adam M. Chaloupka, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Cuyahoga County ("the County") appeals from the trial court's decision affirming an arbitration award in favor of defendant-appellee

Ohio Patrolmen's Benevolent Association ("the Union"). The arbitration stemmed from a grievance filed by Protective Service Officers Willie Austin, Ryan Moore, and Darrin Kirby (collectively "the Grievants"), who challenged the County's recoupment of overpayments it mistakenly made to them in 2021 by deducting their pay over three pay periods in 2022 with little notice and without giving them an opportunity to develop a repayment plan. The trial court affirmed the arbitration award. It is undisputed the County's payments to the Grievants in 2021 were not in accordance with the Collective Bargaining Agreement ("CBA") between the County and the Union. The issue in this case, however, is not whether the Grievants are entitled to the overpayments. Rather, the issue presented in this appeal is whether the arbitrator exceeded his authority when he determined that the County's unilateral recoupment of the 2021 overpayments by deducting the Grievants' 2022 pay did not comport with the provisions of the CBA. Having reviewed the record and applicable law, we conclude no grounds existed for the court to vacate the arbitration award pursuant to R.C. 2711.10(D), and therefore, we affirm the trial court's judgment.

**Background**

{¶ 2} The Ohio Patrolmen's Benevolent Association is the sole collective bargaining agent with respect to wages, hours, terms, and other conditions for employment for the County's Protective Service Officers, who are responsible for the security of the County's properties, including the court houses, juvenile facilities, and social services buildings. The County and the Union are parties to the instant

CBA, which was effective from January 1, 2021, to December 31, 2023, concerning these officers.

{¶ 3} Article 13 of the CBA is entitled "Wages." It sets forth the hourly wages based on where the employee falls on the wage scale. Article 14 of the CBA, titled "Shift Differential," provides increased pay for the officers designated as second-shift or third-shift employees. Article 14, Section 1, defines three separate shifts as follows: the first shift has a start time between 4:00 a.m. and 10:59 a.m.; the second shift has a start time between 11:00 a.m. and 7:59 p.m.; and the third shift has a start time between 8:00 p.m. and 3:59 a.m.

{¶ 4} Pursuant to Article 14 of the CBA, the second-shift employees receive twenty-five cents ($0.25) per hour shift differential and the third-shift employees receive fifty-cents ($0.50) shift differential for all hours worked.[1]

{¶ 5} The three Grievants worked first shift during 2021, which, under the CBA, does not entitle them to any shift differential. However, for almost all of 2021, the County mistakenly paid each Grievant a second-shift differential of $0.25 per hour. The pay statements issued to each grievant include the amount of the shift differential but did not itemize it. The increased wages only amount to approximately $10.00 per week and were therefore not readily apparent. Neither the County nor the Grievants noticed the mistake in 2021.

---

[1]Later negotiations between the Union and the County resulted in a $0.49 per hour equity wage adjudgment and a 2% cost of living adjustment in the 2021 calendar year.

{¶ 6} The mistake was eventually discovered when the County's payroll officer conducted a review of the shift changes between 2021 and 2022 for all protective service officers, set to take effect on January 16, 2022.

{¶ 7} While an employee has ten days to request a correction if he or she is underpaid pursuant to the County's policy, the CBA does not contain any provisions regarding how overpayments should be handled. In contrast, the County has a collective bargaining agreement with another union, Laborer's Local 806, and that agreement includes a provision concerning overpayments. (The overpayment provision in that agreement states that when there are overpayments, employees shall be required to repay such funds, but the County shall not require the employees to repay all overpaid funds in one lump sum; rather, the County shall give the employees the option to repay the funds pursuant to a structured payment plan with the County.)

{¶ 8} After discovering the overpayments, the County did not provide the Grievants with an opportunity to discuss the matter, nor did it notify the Union of the mistake and the County's intention to recoup the overpayments from the Grievants' 2022 pay. On January 13, 2022, the County advised the Grievants of the mistake and informed them that each would incur a deduction of the overpaid amount over three pay periods (2022 pay periods 2, 3, and 4). For Officer Kirby, the gross total of the overpaid wages equaled $672.70; Officer Moore, $682.96; and Officer Austin, $600.50. These amounts were deducted over three pay periods: Kirby's deduction was $224.23 in each of the three pay periods; Moore, $227.65;

and Austin, $200.17. Because of the deductions, the Grievants' hourly wages fell below the amounts they were entitled to receive under Article 13 for the three pay periods at issue.

**Grievance, Arbitration, Application to Vacate the Arbitration Award, and Appeal**

{¶ 9} On February 1, 2022, the Union filed a grievance regarding the County's recoupment. On June 16, 2022, the arbitrator held a hearing over the Union's grievance in accordance with the procedure set forth in the CBA.[2]

{¶ 10} Officer Kirby testified at the hearing that, because his net pay fluctuated with the amount of overtime he worked, he did not notice that he was overpaid in 2021; he testified that, had he realized he was overpaid, he would have notified his supervisor. He also testified that he got behind on his bills as a result of the pay deductions. Officer Moore testified similarly that he had no reason to believe he was overpaid in 2021 because of the fluctuating overtime hours. He testified that he would have notified the County if he was aware of the overpayment; he was overpaid by more than $30,000 in 2013, and he notified the County.

{¶ 11} On September 23, 2022, the arbitrator issued a lengthy decision in the Union's favor. The arbitrator framed the issue as whether the County may recoup overpayments in 2021 through deductions from the Grievants' 2022 pay, with only

---

[2] The record reflects that the parties agreed not to have a court reporter or a transcript of the hearing and agreed that the record would consist of the exhibits and the arbitrator's notes in lieu of the transcript.

two weeks' notice and without giving the Grievants any opportunity to engage in the development of a repayment plan.

{¶ 12} The arbitrator concluded the County breached the CBA by unilaterally recouping from the Grievants the overpaid amounts. The arbitrator ordered the County to pay the sums it had deducted from the officers' paychecks in pay periods 2, 3, and 4 in 2022 (plus damages for any late fees, overdraft fees, or insufficient fund fees that the officers may have incurred) as well as statutory interest at the rate of 6% from the date the funds were deducted. The arbitrator also ordered the County to cease and desist from further deductions from the bargaining unit employees' pay without giving the employees notice and an opportunity to be heard and the County is equitably estopped from recouping the overpayments from the Grievants' pay in this case.

{¶ 13} The County moved to vacate the arbitration award in the common pleas court pursuant to R.C. 2711.13. The County asserted that the arbitration award should be vacated because the arbitrator exceeded his powers in ordering the County to pay the Grievants shift differential in direct contravention of Article 14 of the CBA. The Union filed a cross-application to confirm and enforce the arbitration award pursuant to R.C. 2711.09. The Union argued there were no statutory grounds for vacating the award.

{¶ 14} The trial court, without an analysis, granted the Union's application to confirm the arbitration award and denied the County's application to vacate it. On appeal, the County raises the following assignment for our review:

I.  The trial court erred in denying the County's Application to Vacate because the arbitrator exceeded his authority under R.C. 2711.10(D).

**Standard of Review**

{¶ 15} We begin our review with the recognition that the scope of judicial review of arbitration awards is narrow and the limited scope of judicial review is due to the fact that arbitration is a creature of contract and, if the parties cannot rely on the arbitrator's decision, they have lost the benefit of their bargain. *Zeck v. Smith Custom Home & Designs, L.L.C.*, 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 23, citing *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.*, 98 Ohio App.3d 45, 51-52, 647 N.E.2d 844 (8th Dist.1994).  "[T]he arbitration procedure set forth in R.C. Chapter 2711 authorizes a limited and narrow judicial review of an arbitration award."  *Asset Acceptance, LLC v. Stancik*, 8th Dist. Cuyahoga No. 84491, 2004-Ohio-6912, ¶ 12, citing *Lake Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professional Assn. for the Teaching of the Mentally Retarded*, 71 Ohio St.3d 15, 19, 641 N.E.2d 180 (1994).

{¶ 16} Pursuant to R.C. 2711.13, after an arbitration award is made, a party may file a motion in the common pleas court for an order to vacate the arbitration award.  R.C. 2711.10 sets forth several grounds for the vacation of an arbitration award.  The trial court shall vacate an arbitration award when, for instance, the award is procured by "corruption, fraud, or undue means."  R.C. 2711.10(A).  In this case, the County argues the arbitration award must be vacated because the arbitrator exceeded his powers.  R.C. 2711.10 (D) (the trial court shall vacate the award if the

arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made").

{¶ 17} As for our review, we note that before 2018 there was a split among the appellate districts in Ohio regarding the standard of the appellate review of the trial court decision confirming or vacating an arbitration award. In *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, the Supreme Court of Ohio resolved the conflict. It held that "[w]hen reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." Pertinent to this appeal, the question of whether an arbitrator has exceeded his authority is a question of law. *Portage Cty. Bd. of Dev. Disabilities* at ¶ 25.

{¶ 18} We emphasize that our de novo review "'is not a de novo review of the merits of the dispute as presented to the arbitrator.'" *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2022-Ohio-4284, 202 N.E.3d 787, ¶ 19 (8th Dist.), quoting *Zeck*, 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 12, citing *Adams Cty./Ohio Valley Local School v. OAPSE/AFSCME, Local 572*, 2017-Ohio-6929, 94 N.E.3d 937, ¶ 18 (4th Dist.). Instead, we review a trial court's decision "'de novo to see whether any of the statutory grounds for vacating an award exist.'" *Zeck* at ¶ 12, quoting *Adams Cty.* at ¶ 18.

{¶ 19} "An arbitrator exceeds his or her authority in rendering an award if the award does not draw its essence from the contract." *Zeck* at ¶ 13, citing *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 406, 588 N.E.2d 802 (1992) (citations omitted). An arbitration award draws its essence from an agreement when there is a rational nexus between the agreement and the award. *Zeck* at ¶ 14, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. The Supreme Court of Ohio has also stated that an arbitration award departs from the essence of the agreement when: "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), paragraph one of the syllabus. *See also Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, ¶ 13.

**The Arbitrator Did Not Exceed His Powers Because the Arbitration Award Drew Its Essence From the CBA**

{¶ 20} Here, the County argues that the arbitration award must be vacated because the arbitrator exceeded his power by issuing an award that conflicts with an express term of the CBA and alters or modifies the CBA. Specifically, the County

argues the arbitration award conflicts with Article 14 of the CBA, pursuant to which an employee working the first shift cannot be paid an additional $0.25 per hour.

{¶ 21} The issue in the instant grievance, however, is not whether the Grievants are entitled to the shift differential for working the first shift. Rather, as the arbitrator properly recognized, the issue is whether the County's unilateral recoupment of the 2021 overpayments by deducting the Grievants' 2022 pay, some of the recoupment almost a year later, comports with the provisions of the CBA.

{¶ 22} As the arbitrator noted, unlike the County's collective bargaining agreement with another labor union, the instant agreement does not have a provision permitting the County to recoup overpayments. Because there is no provision governing overpayments, the arbitrator looked to Article 1 ("Purpose of Agreement") of the CBA, which sets forth the purpose of the CBA. The arbitrator acknowledged that Article 1 sets forth the parties' intentions rather than affirmative obligations but reasoned that the parties nonetheless should be held to their clearly expressed intentions, because to allow a party to blatantly disregard them would frustrate the overarching purpose of the CBA and threaten the enforceability of every provision.

{¶ 23} The arbitrator found the County to have breached Article 1 of the CBA, which states, in pertinent part:

> It is the intention of this Agreement * * * that all dealings between the parties hereto shall be conducted *in a legal manner* and consistent with *efficient* and progressive services towards the Employer, the Employees, and the public interest; * * * to provide for the * * *

*equitable adjustment of differences* which may arise,* * * [and] to provide for * * * *cooperative* employee relations ***."

(Emphasis added.)

{¶ 24} First, the arbitrator found the County's pay deductions breached the CBA because they were not handled in a legal manner: the CBA does not contain a provision for recoupment and the deductions were not authorized by the CBA. The arbitrator noted that in another collective bargaining agreement the parties negotiated an overpayment provision whereby employees have an opportunity to repay the overpayments in a structured payment plan. The arbitrator also observed that, without the Grievants' authorization of the deductions, the deductions violated Ohio wage laws pursuant to R.C. 4113.15. Furthermore, for pay periods 2, 3, and 4 of 2022, the Grievants were paid less than the amounts they were entitled to pursuant to Article 13 of the CBA as a result of the unauthorized deductions. In addition, the arbitrator determined the unilateral deductions violated the Grievants' due process rights.

{¶ 25} Second, the arbitrator found the County failed to engage in a manner consistent with efficient services required by Article 1; the County could have provided the Grievants a fair procedure concerning the repayment of the overpayments but instead acted unilaterally and deducted the Grievants' pay, which resulted in the instant grievance procedure and prolonged the resolution of the matter.

{¶ 26} Third, the arbitrator found the County breached Article 1 of the CBA because its pay deductions were not an "equitable adjustment" of the overpayment issue. The arbitrator reasonably interpreted "equitable adjustment" to mean a resolution of the parties' differences in an equitable and fair manner and found the County's unilateral pay deductions not in compliance with the "equitable" requirement.

{¶ 27} Fourth, the arbitrator found the County breached Article 1 of the CBA because it failed to engage in cooperative relations with the Grievants. The arbitrator reasoned that, after the County discovered its mistake of the overpayments, Article 1 would require it to engage with the Grievants, seek their input on how to resolve the overpayments issue, and develop a structured repayment plan.

{¶ 28} After finding the County's pay deductions breached the CBA, the arbitrator applied the legal principle of equitable estoppel and further determined that the County was equitably estopped from recouping its overpayments under the circumstances of this case. To establish equitable estoppel, a party must demonstrate (1) that the defendant made a factual misrepresentation; (2) the misrepresentation was misleading; (3) the misrepresentation induced actual reliance that was reasonable and in good faith; and (4) the relying party suffered detriment as a result. *N. Frozen Foods, Inc. v. Farro*, 2019-Ohio-5344, 138 N.E.3d 1223, ¶ 25 (8th Dist.). *See also Livingston v. Diocese of Cleveland*, 126 Ohio App.3d

299, 710 N.E.2d 330 (8th Dist.1998). The arbitrator found these elements were met under the facts in this case.

{¶ 29} As the arbitrator reasoned, the overpayments were caused by the County's mistake; the employer failed to discover its mistake for many months (up to a year for the first overpayment); the Grievants reasonably expected their paycheck to be accurate — that any mistaken overpayments would be corrected timely (given the ten-day policy for an employee to report underpayment issues) — and relied on the accuracy in spending the money to pay their bills and living expenses. The Grievants suffered detriment when the County belatedly discovered its mistake and deducted the Grievants' pay in three pay periods; the arbitrator cited the testimony of Kirby, who testified as a representative of the Grievants, reflecting that he was behind in paying his bills as a result of the pay deductions. The arbitrator concluded the County was equitably estopped from recouping the overpayments from the Grievants' pay, citing several arbitration decisions regarding the application of equitable estoppel under similar circumstances and for the notion that an employee's right to recover overpayments is not absolute and, where the employer made a mistake and the employee could reasonably believe that he or she was properly paid, the employer should bear the consequences of the mistake.

{¶ 30} The arbitrator also cited several Ohio cases to support the application of equitable estoppel in this case to preclude the County's pay deductions to correct its own mistakes after the Grievants changed their position in reasonable reliance of their paychecks being accurate by spending the money on everyday living expenses.

*See Sheet Metal Workers Local 98 v. Whitehurst*, 5th Dist. Knox No. 03 CA 29, 2004-Ohio-191, ¶ 43 ("Where an aid recipient received funds due to the county department's mistake of fact, the recipient was not liable for a return of the funds where he has materially changed his position by expending the funds for essential household maintenance."); *Firestone Tire & Rubber Co. v. Cent. Natl. Bank*, 159 Ohio St. 423, 424, 112 N.E.2d 636 (1953) ("Where, after a payment under mistake of fact, the payee in good faith changes his position so that he no longer has possession of the money or will be in a worse condition if he is required to refund it than if the payer had refused to pay, to such extent the payee is exonerated from repayment."); and *State Ex rel., Steger v. Garber*, 6th Dist. Lucas No. L-79-031, 1979 Ohio App. LEXIS 10952, 10 (Oct. 26, 1979) (Mistaken payments to a public aid recipient that have been spent for rent, food, and other essentials are not recoverable.).

{¶ 31} Reviewing the trial court's decision affirming the arbitration award and considering de novo the question of whether the arbitrator exceeded his authority, we find that the arbitrator's decision is rationally based on the terms of the CBA, specifically, Article 1 of the agreement. The County is correct that the shift differential received by the Grievants in 2021 was inconsistent with Article 14 of the CBA. However, the overpayments, arguably a breach of the contractual term, was caused by the County itself. While the County has a right to recoup overpayments, the CBA does not contain provisions authorizing unilateral payroll deductions or otherwise addressing recoupment of overpayments. The arbitrator's determination

that the County's manner of recoupment — deducting the Grievants' pay in three pay periods without giving them notice and an opportunity to develop a repayment plan — was reasonably connected to the provisions of Article 1 of the CBA.

{¶ 32} Because there is a rational nexus between the CBA and the arbitration award, we find the arbitration award draws its essence from the CBA and therefore the arbitrator did not exceed his powers in determining the matter in favor of the Union.[3] Regarding the remedy ordered by the arbitrator, the arbitrator's application of the doctrine of equitable estoppel is supported by his detailed analysis of the arbitration and court precedent, and we are remindful that "arbitrators have 'broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned' in the applicable contract." *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 6, quoting *Queen City Lodge No. 69*, 63 Ohio St.3d at 407, 588 N.E.2d 802. Having carefully reviewed the record, we find no statutory grounds exist to vacate the arbitrator's award pursuant to R.C. 2711.10. Accordingly, we affirm the trial court's judgment.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[3] *Compare H.C. Nutting Co. v. Midland Atlantic Dev. Co., LLC*, 2013-Ohio-5511, 5 N.E.3d 125, ¶ 18 (1st Dist.) (The arbitrator failed to discuss the contract language or provide some basis for the arbitration award; the arbitrator's award was vacated because it did not draw its essence from the parties' agreement.).

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
LISA B. FORBES, J., CONCUR