[Cite as *Martins Ferry City School Dist. Bd. of Edn. v. Martins Ferry Edn. Assn.*, 2025-Ohio-1355.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

MARTINS FERRY CITY SCHOOL DISTRICT
BOARD OF EDUCATION,

Plaintiff-Appellee,

v.

MARTINS FERRY EDUCATION ASSOCIATION ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0049

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CV 48

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Christian M. Williams* and *Atty. Daniel L. Lautar*, Pepple & Waggoner, Ltd., for Plaintiff-Appellee and

*Atty. Charles W. Oldfield* and *Atty. Ira J. Mirkin*, Green Haines Sgambati Co., L.P.A., for Defendants-Appellants.

Dated: April 15, 2025

**HANNI, J.**

{¶1} Defendants-Appellants Martins Ferry Education Association (Association) and Lynne Mamone (Mamone) (collectively Appellants) appeal the judgment of the Belmont County Court of Common Pleas. The court granted a motion by Appellee Martins Ferry City School District Board of Education (Appellee) to vacate an arbitration award in Appellants' favor and denied Appellants' application to confirm the award.

{¶2} Appellants assert that the trial court erred by finding that the arbitrator exceeded his authority when he interpreted a term in the parties' collective bargaining agreement (CBA). They also assert that the trial court erred by improperly substituting its interpretation of that term for that of the arbitrator and by finding that Mamone untimely filed her grievance.

{¶3} For the following reasons, we reverse the trial court's decision because the court lacked a proper basis for vacating the arbitrator's decision. The arbitrator did not exceed his authority when he interpreted the term because the term was ambiguous and the arbitrator has sole authority over questions of law in the CBA. Further, the parties to the CBA bargained for the arbitrator's interpretation of the CBA, not the court's interpretation. The arbitrator also properly found the grievance timely filed based on his interpretation.

{¶4} Association and Appellee are parties to a CBA and Mamone as a member of the Association's bargaining unit is subject to the CBA. The CBA includes a salary schedule.

{¶5} In August 2016, Mamone applied for a teaching job with Appellee and stated on her application that she taught for another Ohio school district from 2005-2008. Appellee hired Mamone as a substitute teacher for the 2016-2017 school year and subsequently hired her as a regular teacher for the 2017-2018 school year.

{¶6} The salary schedule credited Mamone with the 2016-2017 substitute teacher service, but not her 2005-2008 teaching service. Mamone did not contest this in 2017 when she was initially placed on the salary schedule.

{¶7} On December 17, 2021, Mamone viewed a Facebook post reporting that an Ohio education association successfully secured backpay for a teacher placed at an

improper level on the salary schedule. Mamone met with Superintendent Jim Fogle on December 20, 2021, three days after viewing the Facebook post. She requested that he credit her for her 2005-2008 teaching service, which would have placed her at a higher level on the salary schedule when she was first hired in 2017. He denied her request, stating that service credit discussions occur at the time of hiring and he could not retroactively award prior service more than four years after Mamone was hired.

**{¶8}** On January 21, 2022, Appellants initiated a grievance against Appellee. They asserted that Appellee failed to credit Mamone with her prior teaching service and failed to place her salary at the proper level on the salary schedule.

**{¶9}** The parties' CBA contains the following relevant provisions:

Article III – <u>Grievance Procedure</u>:

3.1    <u>Definitions</u>.

A.    A "grievance" is an alleged violation, misrepresentation, or misapplication of this agreement.

3.2    <u>Rights of the Grievant</u>.

I.    <u>Time Limit</u>.  * * *.  Lack of adherence to time limits by grievant shall bar the grievance and act as a waiver of grievant's right to proceed.

J.    The Aggrieved, irrespective of the step at which grievance is entered, shall be granted a minimum of fifteen (15) days in which to make the first filing.

**{¶10}** Section 3.3 of the CBA outlines the five steps of the grievance procedure. The first step provides:

A. <u>Informal Step</u> -- If a grievant believes there is a basis for an eligible grievance, the grievant must first discuss the matter with an immediate supervisor in an effort to resolve the problem informally unless both parties agree in writing to waive this step. **Such discussion must take place with [sic] fifteen (15) days after the alleged grievance occurs.**

<u>Case No. 24 BE 0049</u>

> The immediate supervisor shall provide the aggrieved with an answer within five (5) days of the informal discussion.

(CBA, Section 3.3(A) (emphasis added).

{¶11} If the grievant is dissatisfied with the resolution from the informal discussion, she may lodge a formal claim in writing to her immediate supervisor under Step 1 of the grievance procedure. (CBA, Section 3.3(B)). Step II instructs the dissatisfied grievant to appeal the immediate supervisor's decision in writing to the superintendent. (CBA, Section 3.3(B)). It requires the superintendent to hold a hearing and issue a decision in writing. (CBA, Section 3.3(B), (C)). Step III permits the grievant to appeal to Appellee if she is dissatisfied with the superintendent's decision. (CBA, Section 3.3(D)). Step IV provides that if the grievant is dissatisfied with that disposition, she may submit her grievance to arbitration by the American Arbitration Association. (CBA Section 3.3(E)).

{¶12} The parties agreed that Mamone could initiate her grievance at Step II of the grievance procedure. (Arb. Hg. Tr. 206). They also agreed that "other than the initial filing, all relevant timelines of the grievance procedure were met." (Arb. Decision, 11).

{¶13} Mamone filed her grievance on January 31, 2022 and identified December 20, 2021 as the date when the grievance occurred. This is the date that she met with Superintendent Fogle and discussed the issue.

{¶14} After a Step II hearing, Superintendent Fogle denied the grievance in writing, making the following disposition:

> Based on the facts presented to me at the Step II grievance hearing on January 31st, 2022, I find that there was no misapplication, misinterpretation, or violation of the negotiated agreement pertaining to this matter. I also find that the grievance was not timely filed.

(Step II Grievance Form).

{¶15} Appellants moved to Step III of the grievance procedure and Appellee denied the grievance after a hearing. Appellee found Mamone's grievance untimely filed "since the Grievant's placement on the salary schedule occurred in 2017 and the grievance was not filed until December 20, 2021." (Appellee Exhibit 8). Appellee found

no violation, misinterpretation, or misapplication of the CBA.

{¶16} Appellants moved to arbitration under Step IV and the arbitrator held a hearing on September 13, 2022. Evidence was presented and witnesses testified.

{¶17} On November 14, 2022, the arbitrator issued an Opinion and Award granting the grievance. The arbitrator determined the two issues presented by parties as:

1. Is the grievance procedurally arbitrable?

2. If so, was the Grievant placed on the correct step of the salary schedule when she was hired in 2017? If not, what is the appropriate remedy?

(Arb. Decision, 3).

{¶18} The arbitrator found that Appellee had to prove the grievance was procedurally arbitrable since Appellee raised the issue and it was an affirmative defense. (Arb. Decision, 22). The arbitrator noted that he was required to balance two interests when deciding procedural arbitrability: (1) time limits are to be kept; and (2) grievances are meant to be heard and decided on their merits. (Arb. Decision, 22).

{¶19} The arbitrator rejected Appellee's assertion that waiver barred Appellants from raising the issue of Mamone's prior teaching credit. Appellee asserted waiver because Mamone filed her grievance in 2021 when she knew in 2017 that her salary did not include that credit. The arbitrator cited caselaw defining waiver as the voluntary relinquishment or abandonment of a legal right. (Arb. Decision, 22). He held that for waiver to apply, Appellee had to show Mamone knew she had a right to prior service credit and she intended to relinquish it. (Arb. Decision, 24).

{¶20} The arbitrator held that Appellee failed to prove Mamone knew that a policy existed requiring her to discuss prior teaching credit when she was first placed on the salary schedule. (Arb. Decision, 24). He held that even though the CBA required a grievance to be filed within 15 days after the grievance "occurs," it was unreasonable to conclude that the parties intended this provision to waive a member's right to file a grievance when she did not know a right even accrued. (Arb. Decision, 24). He also found that even if Mamone reviewed the CBA when initially placed on the salary schedule,

she would not have known she was entitled to a higher salary with her prior teaching service because the CBA did not address the issue.  (Arb. Decision, 24).

**{¶21}** The arbitrator thus held that the relevant date for determining when a grievance "occurs" was not when Mamone knew the service credit she was given initially, but when she understood she had a potential right to additional credit.  (Arb. Decision, 24).  He concluded that Mamone understood a potential credit existed when she saw the Facebook post and spoke with Superintendent Fogle.  He held that the basis for the grievance arose after Superintendent Fogle denied her request for the credit.

**{¶22}** Accordingly, the arbitrator determined that Mamone timely filed her grievance within 15 days of Superintendent Fogle's denial.  (Arb. Decision, 25).  He explained that Mamone and Superintendent Fogle spoke on December 20, 2021, the same date that the school's Christmas vacation began, and school resumed on January 3, 2022.  The arbitrator reasoned that January 21, 2022 was the fifteenth workday after the December 20, 2021 meeting.  (Arb. Decision, 11).

**{¶23}** The arbitrator proceeded to consider the merits of the grievance and found in Appellants' favor.  (Arb. Decision, 26).  He ordered Appellee to immediately place Mamone at the proper step on the salary schedule, including the three additional steps for her three prior years of teaching.  (Arb. Decision, 30).  The arbitrator also ordered Appellee to make Mamone whole for all lost wages and benefits.  (Arb. Decision, 30).

**{¶24}** On February 13, 2023, Appellee filed a motion to vacate the arbitration award in the trial court.  On April 6, 2023, Appellants filed a motion to confirm the arbitration award.  Appellee filed a reply brief and opposition to the motion to confirm. Appellants filed a surreply with leave of court.  The court scheduled the motion for a hearing.

**{¶25}** The court held a hearing and issued a decision on September 10, 2024 granting Appellee's motion to vacate the arbitration award.  The court held that its decision was solely based on the "fifteen-day timeline to file a grievance and whether that was met to permit this matter to enter Arbitration."  (Sept. 10, 2024 J.E.).

**{¶26}** The court acknowledged that R.C. 3317.13 and 3317.14 required Appellee to credit Mamone with the three years of prior teaching if she met the minimum amount of days requirement in the statute and no prohibition existed for crediting the prior service

retroactively.  (Sept. 10, 2024 J.E.).  The court held that not crediting Mamone was clearly unfair and unjust, and violated Ohio law and Appellee's own policies.  (Sept. 10, 2024 J.E.).

**{¶27}**  However, the court held that time deadlines in the CBA grievance process could not be altered or bypassed by interpreting terms beyond their ordinary meanings.  (Sept. 10, 2024 J.E.).  The court held that the arbitrator exceeded his authority by finding the term "occurs" ambiguous in Section 3.3(A) of the CBA.  (Sept. 10, 2024 J.E.).  The court cited Section 3.3(E) of the CBA stating that the arbitrator cannot "add to, alter, or delete" from the CBA's terms.  (Sept. 10, 2024 J.E.).  The court held that the arbitrator's interpretation conflicted with the CBA's express terms and lacked rational support or rational derivation from the express terms.  (Sept. 10, 2024 J.E.).

**{¶28}**  The court further held that Mamone's own testimony showed that the arbitrator's two-part test for the term "occurs" was not met.  (Sept. 10, 2024 J.E.).  The court quoted the arbitrator's finding that the 15-day filing requirement began on "the date she [Mamone] understood or realized the amount of credit she received could be incorrect."  (Sept. 10, 2024 J.E., citing Arb. Decision, 23).  The court held that Mamone testified that she knew the basis for her grievance more than 15 days before the Facebook post.  (Sept. 10, 2024 J.E.).  The court held that under the arbitrator's interpretation, a grievance could be filed "10, 20, 30, or more years after it occurred."  (Sept. 10, 2024 J.E.).

**{¶29}**  The court further found that "Defendant Mamone when asked if viewing Exhibit 21 [the Facebook post], was an event that made her stop just wishing that she had been given service credit she responded yes.  Therefore she had knowledge of this prior to reviewing the Facebook post."  (Sept. 10, 2024 J.E.).  The court held that Mamone's grievance was untimely filed and vacated the arbitrator's award.

**{¶30}**  Appellants filed this appeal and assert the following sole assignment of error:

**THE TRIAL COURT ERRED WHEN IT GRANTED THE BOARD OF EDUCATION'S MOTION TO VACATE THE ARBITRATION AWARD AND DENIED THE MARTINS FERRY EDUCATION ASSOCIATION'S APPLICATION TO CONFIRM THE ARBITRATION AWARD.**

**{¶31}** Appellants contend that the court erred by substituting its interpretation of the term "occurs" in the CBA grievance procedure for that of the arbitrator. They assert that arbitrators have sole authority to interpret ambiguous CBA terms and determine procedural questions. They cite cases holding that the arbitrator's interpretation controls because the parties bargained for the arbitrator's interpretation in the CBA.

**{¶32}** Appellants also contend that the trial court erred by vacating the arbitration award under R.C. 2711.10(D) on the basis that the arbitrator exceeded his authority. They submit that an arbitrator exceeds his authority when his award fails to "draw its essence" from the CBA. Quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80 (1986), they assert that an award "draws its essence" from the CBA "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Appellants quote *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177 (1991), syllabus, for the holding that an arbitration award fails to "draw its essence" from the CBA when, "it conflicts with the express terms of the agreement" or it is "without rational support or cannot rationally be derived from the terms of the agreement."

**{¶33}** Appellants cite the arbitrator's reliance on *State ex rel. Crites v. Windham Exempted Village Bd. of Edn.*, 1999 WL 1299298 (11th Dist. Dec. 17, 1999), that a grievant does not waive her right to a service credit merely by executing an employment contract. They note that the *Crites* court held that Crites did not waive her right to service credit even if she executed an employment contract and confirmed that she accepted the salary of a teacher with no experience. *Id.* at *7. The court explained that waiver could only be established if Crites had also expressly stated orally or in writing that she intended to relinquish her right to the credit. *Id.*

**{¶34}** Appellants acknowledge that *Crites* was a mandamus action, but they submit that the arbitrator properly applied it here to find that Mamone did not waive her right to service credit. They submit that like Crites, no evidence showed Mamone knew of her right to credit for past teaching or that she intentionally chose to relinquish it.

**{¶35}** Appellants also assert that the arbitrator correctly held that forfeiture did not apply because the law dislikes forfeitures and favors resolving issues on their merits.

Appellants further submit that the arbitrator correctly declined to apply *Trimble Local Bd. of Edn. v. Trimble Local Teacher's Assn.*, 2017 WL 8794175, Lab. Arb. Awards 18-1 ARB P 7102 (Dec. 21, 2017), as advocated by Appellee. The arbitrator in *Trimble* ruled that the teacher's grievance occurred when she was first incorrectly placed on the salary schedule. *Id.* Appellants distinguish *Trimble* because the arbitrator there found that the teacher previously questioned authorities about the issue and they rejected her claim.

**{¶36}** Appellants also agree with the arbitrator's policy reasons for reaching the merits. They cite R.C. 3317.13 and 3317.14 as placing the responsibility on Appellee to ensure that teachers receive credit for prior teaching service. They note that the statutes place teachers with more experience at a higher salary for that experience, and Appellee cannot escape that responsibility by advocating a 15-day deadline to those hired who fail to realize they were not credited.

**{¶37}** Appellee counters that the court correctly held that the arbitrator exceeded his authority by rewriting the CBA grievance procedure. Appellee contends that the arbitrator applied an unreasonable definition of the word "occurs" beyond its plain and ordinary meaning and added a requirement that the grievant must have shown "an unmistakable [sic] intention" to waive the grievance. (Arb. Dec., 25).

**{¶38}** Appellee asserts that the court properly applied the plain and ordinary definition of "occurs" by using the first definition of "occurs" in *Black's Law Dictionary*, which is defined as "to happen." Appellee contends that the court correctly applied this definition to find that the grievance occurred in 2017 when the salary schedule showed that Mamone did not receive a higher-level salary upon placement on the schedule. Appellee submits that the arbitrator's decision did not "draw its essence" from the CBA because it added a requirement of "actual or imputed knowledge" by the grievant when the CBA lacked such a standard.

**{¶39}** Appellee further contends that the CBA specifically included waiver language in Section 3.2(I) providing that: "[l]ack of adherence to time limits by grievant shall bar the grievant and act as a waiver of grievant's right to proceed." Appellee notes that this section also includes a waiver by school officials as it further states that their failure to communicate a disposition at any step of the grievance procedure grants the grievant the relief sought.

Case No. 24 BE 0049

**{¶40}** Appellee maintains that the arbitrator's decision was outcome-driven to provide justice for Mamone, rather than to apply the CBA's express terms. Appellee notes that an arbitrator's authority does not extend to applying his own brand of justice because the award must "draw its essence" from the CBA and the bargain all parties agreed to in the CBA.

**{¶41}** We find merit to Appellants' assignment of error.

**{¶42}** R.C. 2711.10 provides that a court may vacate an arbitration award in four circumstances. R.C. 2711.10(D) provides that an arbitration award may be vacated when "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**{¶43}** In reviewing the trial court's decision to vacate, confirm, modify or correct an arbitration award, we must accept findings of fact that are not clearly erroneous and decide questions of law de novo. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2018-Ohio-1590, ¶ 26. Our review is limited to the order issued by the trial court and we may not review the dispute presented to the arbitrator nor substitute our judgment for that of the arbitrator*. Id.* at ¶ 9, 13.

**{¶44}** Where parties to a CBA have contracted for an arbitrator to decide their disputes rather than a court, "'it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept.'" *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 110 (2001), quoting *United Paperworkers Internatl. Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987). Thus, judicial review of an arbitrator's decision is narrow because the parties to a CBA have contracted for that decision and have lost the benefit of their bargain if they cannot rely on that decision. *Cuyahoga Cty. v. Ohio Patrolmen's Benevolent, Assn.*, 2024-Ohio-1055, ¶ 15 (8th Dist.).

**{¶45}** "'The fact that the common pleas court may have arrived at a different conclusion than did the arbitrator is immaterial. The common pleas court does not balance the equities, weigh the evidence or assess the credibility of witnesses. Instead, a common pleas court is bound by an arbitrator's factual findings and serves only as a mechanism to enforce the arbitrator's award.'" *Dorset Twp. Bd. of Trustees v. T-Line EV, LLC*, 2024-Ohio-6002, ¶ 20 (11th Dist.), quoting *Carothers v. Shumaker, Loop &*

*Kendrick, LLP,* 2023-Ohio-1907, ¶ 28 (6th Dist.) (quoting *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.,* 98 Ohio App.3d 45, 52 (8th Dist. 1994)).

**{¶46}** Whether an arbitrator has exceeded his authority is a question of law. *Portage Cty. Bd. of Dev. Disabilities*, 2018-Ohio-1590, at ¶ 25. Since the trial court held that the arbitrator exceeded his authority, we apply a de novo review to the trial court's decision in order to determine if this statutory ground exists for vacating the arbitrator's decision. *Cuyahoga Cty. v. Ohio Patrolmen's Benevolent, Assn*., 2024-Ohio-1055 (8th Dist.).

**{¶47}** An arbitrator exceeds his authority if the award does not "draw its essence" from the contract. *Zeck v. Smith Custom Homes & Design, LLC*, 2022-Ohio-622, ¶ 13 (8th Dist.). The arbitration award "draws its essence" from the agreement when a rational nexus exists between the agreement and the award. *Id.* at ¶ 14, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn*., 2 Ohio St.3d 80, 84 (1986). An arbitrator's award deviates from the essence of the agreement when: "'(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.'" *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 182-183 (1991) (citation omitted). The inquiry of a reviewing court ends once the court determines that an arbitrator's award draws its essence from the agreement and that award is not unlawful, arbitrary, or capricious*. Zeck*, 2022-Ohio-622, at ¶ 14.

**{¶48}** Appellants dispute the trial court's ruling that the arbitrator exceeded his authority with his interpretation of the word "occurs" as used in Section 3.3(A), the Informal Step. That Step states that the grievant must first discuss the alleged grieved matter with her immediate supervisor. The relevant phrase states that, "[s]uch discussion must take place with [sic] fifteen (15) days after the alleged grievance occurs." (CBA, Section 3.3(A)). This "occurs" language is absent from Step II, which is the step in which Appellee permitted Appellants to enter the grievance procedure. However, the parties' arguments focus on the arbitrator's interpretation of this term.

**{¶49}** An arbitrator may not disregard or modify plain and unambiguous provisions of a CBA. He must interpret CBA provisions as they are written and must construe terms

not defined in the CBA in accord with their plain and ordinary meanings. *Internat'l Assn. of Firefighters, Local 67 v. Columbus*, 2002-Ohio-1936.

**{¶50}** Here, the CBA section does not define the term "occurs." No part of the CBA provides clarity as to the definition or when a grievance "occurs." The arbitrator held that the date that the grievance "occurs" was when Mamone understood or realized that the CBA may have entitled her to greater service credit and the amount she received could be incorrect. (Arb. Dec., 23).

**{¶51}** The trial court rejected this interpretation and relied upon the definition of "occurs" from the Sixth Edition of *Black's Law Dictionary*. (Sept. 10, 2024 J.E., 3). The court held that *Black's* defined "occurs" as "to happen," and the court stated that this definition is one "which clearly most would agree is what the word regularly means." (Sept. 10, 2024, J.E., 3). The court held that the grievance occurred when Mamone was initially placed on the salary schedule in 2017 and therefore knew that her prior teaching service was not credited. (Sept. 10, 2024 J.E., 2-3).

**{¶52}** Notably, the version of *Black's Law Dictionary* relied upon by the court was published in 1990. The subsequent versions of *Black's Law Dictionary* published in 1999, 2004, 2009, 2014, 2019, and 2024 no longer contain a definition of the word "occurs." The 1990 Edition did define "occurs" as "to happen." *Black's Law Dictionary* (6th Ed. 1990).

**{¶53}** The Merriam-Webster Dictionary defines "occur" as "to be found or met with: appear." http://www.merriam-webster.com/dictionary/occur. The second definition is "to come into existence: happen." http://www.merriam-webster.com/dictionary/occur. The third definition is "to come to mind." http://www.merriam-webster.com/dictionary/occur. Dictionary.com defines "occur" as "1. To happen; take place; come to pass. 2. To be met with or found; present itself; appear. 3. To suggest itself in thought; come to mind." https://www.dictionary.com /browse/occur.

**{¶54}** Even accepting the trial court's definition, the question of when the grievance happened is still unanswered. Did the grievance "happen" when the first salary schedule came out and it did not include the prior service credit, or did it "happen" when Mamone discovered that she may not have received prior service credit and had a potential claim for prior service credit? The word "happen" is also ambiguous.

Case No. 24 BE 0049

**{¶55}** Accordingly, the arbitrator had the authority to determine when the grievance "occurs." The arbitrator's interpretation drew its essence from the CBA. First, the CBA provides that if a conflict exists between a CBA provision and any applicable state or federal statute, the latter prevails. (CBA, Section 2.10). The arbitrator cited and quoted R.C. 3317.13, which requires Appellee to credit a teacher with up to five years of prior teaching service. (Arb. Dec., 23). The arbitrator also cited and quoted Board Policy 3411, which requires Appellee to provide up to ten years of prior teaching credit. (Arb. Dec., 23). The arbitrator reasoned that the Appellee therefore had the duty to provide the prior service credit.

**{¶56}** The arbitrator relied on *Crites* and found it applicable since the right of a teacher to service credit was a matter of law. (Arb. Dec., 23). The arbitrator acknowledged that while *Crites* involved a writ of mandamus to the appellate court, the holding by the court as to waiver applied to the instant case. (Arb. Dec., 24). The arbitrator applied the *Crites'* holding that waiver of a legal right, such as proper salary placement by a teacher, cannot be waived unless the right was known by the teacher and the teacher intended to forego that right. (Arb. Dec., 24). The arbitrator found that Mamone did not waive this right in 2017 with the initial salary placement because she did not know she had a potential grievance at that time or that she had been improperly placed on the salary schedule. (Arb. Dec., 24). The arbitrator noted that the CBA failed to address how salary placement initially occurs. (Arb. Dec., 24).

**{¶57}** The arbitrator considered the *Trimble* arbitration case advocated by Appellee and reasonably found it distinguishable. The arbitrator here found *Trimble* distinguishable because the teacher there initially questioned the board's failure to credit her prior teaching service and she was told that she would be credited with zero experience. (Arb. Dec., 13).

**{¶58}** The arbitrator in *Trimble* held that the teacher's grievance was not procedurally arbitrable because it was submitted three and one-half years late. *Id.* That teacher was hired in 2012 and the relevant step in the CBA grievance procedure provided that a grievant must bring the grievance to the supervisor "within twenty (20) days after they know or should have known of the alleged grievance." *Id.* It was not until 2016 when the teacher challenged the lack of prior service credit on her salary schedule when she

learned that another teacher was given prior teaching experience on the salary schedule. *Id.*

**{¶59}** The *Trimble* arbitrator found the grievance untimely since the teacher sought to discuss the lack of credit in 2016 when she requested the meeting about her placement on the salary schedule at the time she was hired. *Id.* The arbitrator found that the teacher's request was not within twenty days of her knowing or should have knowing that she did not receive credit for her prior experience. *Id.*

**{¶60}** In reviewing *Trimble*, the arbitrator in the instant case noted that it was based on a different CBA and circumstances than those here. The arbitrator explained that *Crites* was more persuasive as an appellate court decision. In addition, the arbitrator in the *Trimble* case relied upon the language in the grievant's request and the CBA to find that it was not procedurally arbitrable. The arbitrator in the instant case relies upon the CBA language, Ohio statutory law, caselaw, and policy considerations.

**{¶61}** The arbitrator in the instant case held it was unreasonable to conclude that the parties to the CBA intended a bargaining unit member to waive the right to file a grievance before she knew that she even possessed such a right. (Arb. Dec., 24). The arbitrator reasoned that the parties to the CBA did not intend that bargaining unit members give up their right to grieve improper salary placement before they even receive a paycheck or become familiar with the service credit system. (Arb. Dec., 23).

**{¶62}** For these reasons, we hold that the arbitrator's decision did not conflict with the express terms of the CBA and the decision "drew its essence" from the CBA, the relevant statutes, and caselaw disfavoring waiver and forfeiture. A rational nexus existed between the arbitration award and the arbitrator's decision was not arbitrary, capricious, or unlawful.

**{¶63}** Accordingly, Appellants' assignment of error has merit. We therefore reverse the trial court's decision to grant Appellee's motion to vacate the arbitration award and vacate the arbitrator's decision on arbitrability. We remand this matter for the trial court to determine Appellants' motion to confirm the arbitration award in accordance with this Court's Opinion and Judgment Entry.

Robb, P.J., concurs.

Dickey, J., concurs.

Case No. 24 BE 0049

[Cite as *Martins Ferry City School Dist. Bd. of Edn. v. Martins Ferry Edn. Assn.*, 2025-Ohio-1355.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is reversed as to the decision to grant Appellee's motion to vacate the arbitration award and vacate the arbitrator's decision on arbitrability. We hereby remand this matter for the trial court to determine Appellants' motion to confirm the arbitration award and for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**